UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-170H

JULIUS NOE, et al.                                                                                       PLAINTIFFS

V.

POLYONE CORPORATION                                                                           DEFENDANT

**MEMORANDUM OPINION**

Plaintiffs Julius Noe and others have sued their former employer's current incarnation, PolyOne Corporation ("PolyOne"), under the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2006), for breach of a collective bargaining agreement ("CBA") between an employer and their labor organization. Plaintiffs have moved for a preliminary injunction and to certify a class; Defendant PolyOne has moved for summary judgment.

These motions present the question whether PolyOne breached the applicable CBA when it altered certain health benefits to former employees by imposing premiums and charging co-payments for prescriptions. Having heard oral arguments from both counsel, the Court does not find a contractual basis for concluding that such action violated any CBA between PolyOne and Plaintiffs' labor organizations.[1]

I.

Plaintiffs are former employees or the surviving spouse of a former employee of B.F.

---

[1] Because the motion for summary judgment is outcome determinative in this case, the Court will not address the preliminary injunction or the motion to certify.

Goodrich Company ("Goodrich"), in its Geon Vinyl Division. In early 1993, the Geon Vinyl Division became a separate subsidiary of Goodrich and ultimately merged with another company to become PolyOne. As a consequence of these transactions, PolyOne now carries the legal obligation for the Goodrich retirement plans pertaining to Plaintiffs.

Plaintiffs all retired from Goodrich between 1979 and 1990. During their employment, each Plaintiff was affiliated with one of four labor unions representing employees at Goodrich's Louisville facility.[2] During this time period, Goodrich entered into a series of CBAs with these unions that provided various benefits to Plaintiffs.[3] During the same time, Goodrich also entered into a series of Agreements on Employee Benefit Programs ("EBAs") with another union, the International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO-CLC, ("URW Union") which represented Goodrich employees at facilities in other states.[4] The EBAs provided retiree medical benefits to Goodrich employees who were URW Union members. Plaintiffs were not members of the URW Union, which had no members in Louisville.

Plaintiffs say that the health benefits in the EBAs were made applicable to the employees

---

[2] The four unions representing employees at Goodrich's Louisville facility were Distillery, Wine & Allied Workers International Union, Distillery, Rectifying, Wine and Allied Workers' International Union of America, Local No. 72 ("Local 72"), IBEW Local 369, Pipe Fitters Local 522, and Machinists Local 681.

[3] The CBAs upon which Plaintiffs base their LMRA claims are between B.F. Goodrich Chemical Company and Distillery, Rectifying, Wine and Allied Workers' International Union of America, Local No. 72. Four such agreements apply to Plaintiffs, depending upon their respective dates of retirement. Plaintiff Reynolds bases his claim on the 1976 CBA, Plaintiffs Bowman and Wilder base their claims upon the 1979 CBA, Plaintiffs Duncan and Noe base their claims on the 1984 CBA, and Plaintiff Hood bases her claim on the 1988 CBA. These agreements are substantially similar for our purposes, and the parties refer to them collectively as the CBAs. None of them contain language vesting retiree health benefits.

[4] The record contains two EBAs, one of which is dated April 21, 1982, and the other April 21, 1985. The language is identical in all sections relevant to the vesting of retiree benefits. Since both parties refer to these EBAs collectively, this Court will do the same.

in Louisville through a series of Memoranda of Agreement ("MOA"), beginning in 1970 and extended by letter through July 31, 1988, between Goodrich and Local 72.[5] All of the MOA contain the same general language. The pertinent provision from the 1979 MOA states:

> The Pension Plan, including the requirement for compulsory retirement at age seventy, the Hospitalization, Surgical and Medical Expense Insurance Program, the Life Insurance Program, the Sickness and Accident Insurance Program, the Transition and Bridge Survivor Program, and the Prescription Drug Program presently in effect for the majority of The BFGoodrich Company's production and maintenance employees shall be in effect for the life of this Agreement; provided that if during the term of this Agreement the Plan or Programs are changed for such majority, such changes shall be made effective on the same date they are made effective for the majority of The BFGoodrich production and maintenance employees and remain in effect for the life of this Agreement.

The parties actually agree that this section refers to benefits provided by the EBAs. Its provisions did not require employees to contribute toward their health insurance premiums; reimbursed employees for premiums for Medicare Part B; and required employees to pay only a nominal fee for prescription medication.

On August 1, 1988, a new Flexible Benefit Program for Union employees went into effect and continued until May 31, 1991. This plan applied to new employees. The retired employees continued to receive benefits under the EBA plan. Everyone agrees that Plaintiffs actually received the benefits described in the EBAs and continued to receive them after retirement. Beginning April 1, 2006, PolyOne began charging the Plaintiffs premiums on their

---

[5] The record contains four MOA for the years 1964, 1970, 1973, and 1979. A 1982 letter from the Goodrich Manager of Employee Relations to the Vice President of Local 72 extended the 1979 CBA and MOA through 1984. A similar 1986 letter extended the previous MOA and various benefits through May 31, 1988. Some benefits were changed slightly by the new Flexible Benefit Program adopted in 1988, and a letter extended those benefits through May 31, 1991. Like the CBAs and EBAs, the parties in this case treat the MOA as a unified chain of documents without substantial differences, and they refer to them collectively.

healthcare coverage,[6] stopped reimbursing for Medicare, and began charging co-pays for prescriptions subject to a $2000 out of pocket maximum.  Plaintiffs say that to impose the new premium charges violates promises contained in the CBAs and MOAs between the Louisville unions and Goodrich.

II.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995).  On summary judgment, the evidence before the Court must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir.2006).

III.

ERISA contemplates two distinct types of employee benefit plans: pension plans and welfare benefit plans.  *See* 29 U.S.C. § 1002(1) - (2) (2006).  Retiree healthcare insurance benefit plans are welfare benefit plans, 29 U.S.C. § 1002(1) (2006), and unlike pension plans, there is no statutory right to lifetime health benefits.  *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 578 (6th Cir. 2006).  If lifetime health benefits exist for Plaintiffs, it is because Goodrich agreed to vest a welfare benefit plan.  *See id.*  Thus, whether benefits vest depends upon the intent of the parties.  *Id.*  Plaintiffs bear the burden of showing "that the defendant and the union intended to

---

[6] The range of premiums, which depends upon coverage, is disputed.  Plaintiffs contend the range is between $138 - $208 per month, while Defendants claim it is $69 - $284 per month.

include a right to lifetime benefits when they negotiated the CBAs at issue." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). Basic rules of contract interpretation apply, so the Court must first look to the explicit language of applicable CBAs for clear manifestations of intent. *See Yolton*, 435 F.3d at 579. Only when ambiguities exist may the Court look to other extrinsic evidence. *See id.*

Various Sixth Circuit opinions have generated debate about the applicable standards for determining whether the parties intended retiree health benefits to vest. The parties hotly dispute the meanings of *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) and *Yolton,* 435 F.3d at 571. In *Yard-Man, Inc.*, the Court stated that "retiree benefits are in a sense 'status' benefits which, as such, carry with them an *inference* that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." *Yard-Man*, 716 F.2d at 1482 (emphasis added). More recently in *Yolton*, the Sixth Circuit expended considerable energy clarifying this inference. Consequently, it seems clear that "there is no legal presumption based on the status of retired employees." *Yolton*, 435 F.3d at 579 (quoting *Int'l Union, United Auto-Workers v. Cadillac Malleable Iron Co.*, 728 F.2d 807, 808 (6th Cir. 1984)). Moreover:

> *Yard-Man* does not shift the burden of proof to the employer, nor does it require specific anti-vesting language before a court can find that the parties did not intend benefits to vest. Rather, the *Yard-Man* inference, and the other teachings of the opinion regarding contract interpretation and the consideration of extrinsic evidence, simply guide courts faced with the task of discerning the intent of the parties from vague or ambiguous CBAs.

*Yolton*, 435 F.3d at 579 (quoting *Golden*, 73 F.3d at 653). *Yolton* makes it clear that despite the language of *Yard-Man*, courts are to apply ordinary principles of contract interpretation when determining whether the parties to a CBA intended employee health benefits to vest. *Id.* at 580.

The Court will now apply this standard.

5

IV.

The CBAs between Local 72 and Goodrich primarily addressed work conditions and are silent as to retiree healthcare benefits. The MOAs incorporate additional language into the CBAs and speak directly to such benefits. That language does not specifically describe any benefits, but it does say something about their duration. Specifically, it states that "if during the term of this Agreement the Plan or Programs are changed for [the majority of the Goodrich Company's production and maintenance employees], such changes shall be made effective" for the Louisville employees.[7] This language suggests that all employee benefits are subject to change, for better or worse, without negotiation with any of Plaintiffs' unions. Thus, at this initial level of analysis none of the agreements negotiated directly between Plaintiffs' unions and Defendant contain any language that vests benefits. If the analysis ended here, the Court would have no basis to conclude that any benefits vest. The MOAs, however, do not completely resolve the issue.

A.

Plaintiffs argue that the MOAs incorporate an entirely separate agreement, the EBAs. These agreements, Plaintiffs say, do vest certain healthcare benefits. Before reaching that issue, however, the Court must resolve some problems with the effort even to incorporate the EBAs. Neither Plaintiffs nor their representatives were parties to the EBAs, and it is a well-known tenet

---

[7] The MOAs also contain a more general clause stating that the Plans shall remain in effect "for the life of this Agreement [the MOA]". Although such a clause might be interpreted as a limitation on the duration of the Plans as they pertain to the individual retirees, the Sixth Circuit has held that a similar clause stating that an insurance plan "will run concurrently with [the CBA] and is hereby made part of this Agreement" is general durational language that says nothing about the retiree benefits. *Yolton*, 435 F.3d at 581. Absent specific durational language referring to the retiree benefits themselves, the clause was held to simply prevent future retirees who retire after the expiration of the CBA from obtaining previous benefits. *See id.*

6

that "a certified union [such as the URW Union] is authorized to bargain only for those employees in the appropriate bargaining unit." *Harris v. Lockheed Aircraft Corp.*, 572 F.2d 138, 141 (6th Cir. 1977) (rejecting claim that one union's negotiated CBA extended retirement benefits for members of a different union). Since the URW Unions represented none of the Plaintiffs, the EBAs should not apply to the Louisville employees without some specific reference or incorporation.

Generally, parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, "so long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt." 11 Richard A. Lord, *Williston on Contracts* § 30:25 (4th ed. 2006). Here, Plaintiffs cite only general language referencing the EBAs, and nowhere does any MOA mention a specific EBA. Plaintiffs argue that the parties "agreed and understood" that the employee benefit agreements negotiated between Goodrich and the URW Union would be applicable to the employees at the Louisville facility. Indeed, the EBAs seem to be the only plausible reference. Though the MOA is far from clear, the parties appear to have intended that this general reference incorporate the EBA health benefit provisions.

B.

The next question is whether the EBAs can be said to vest healthcare benefits. No language in the EBAs specifically vests retiree health benefits.[8] In fact, the language seems to

---

[8] The record contains no indication of whether URW Union retirees, the original beneficiaries of the EBAs, still receive health benefits.

7

suggest the opposite.  The first relevant provision, Article 12.1, which describes the medical benefits, states that the company will provide them "for the duration of this Agreement."  A later provision styled "Duration and Termination," Article 16.4, contains other express durational limits for benefits.  It states

> Upon termination, this Agreement shall terminate in all respects except that the benefits provided by it shall be extended for ninety (90) days following such termination.  Except as herein otherwise provided, no provision of this Agreement shall be subject to change prior to the expiration date of this Agreement.

Had the EBA negotiators wished to vest retiree health benefits, they could have used the same language that they used in Article 6 to vest pensions.  That article contains strong language stating that pension payments shall be payable monthly "during the life of such Employee, the last payment thereof being payable for the month in which he dies."  That such language was not used for retiree health benefits suggests that the drafters did not intend to vest a particular medical benefit plan.  The Court concludes that the language in Article 12.1 and 16.4 expresses an intent not to vest benefits.

      Plaintiffs argue that another provision, Article 12.14, does vest healthcare benefits because it makes them dependent upon eligibility of pension benefits, which are vested, and because it contains language about the benefits available to spouses.  This Court most respectfully finds these arguments unpersuasive.  Article 12.14 focuses upon an employee's eligibility for benefits rather than upon the duration of those benefits.  For instance, it states that "[e]mployees who retire and who are eligible under the 1979 Employee Benefit Agreement for a Pension . . . shall receive the benefits described in [Article 12]..."  That Article 12.14 references "the benefits described in [Article 12]," which, as the Court has already discussed, only

8

guarantees health benefits for the duration of the EBA. None of this language suggests that any health benefits were intended to be permanent or unchanging. The Article does state that "the surviving spouse of an Employee who is retired by the Company on or after the effective date of this Agreement shall continue to be *eligible* to receive such benefits to the earlier of the date of death or remarriage..." (emphasis added). Once again, this is a provision which concerns the eligibility of beneficiaries, rather than the duration of benefits.

In the absence of any language that specifically vests the employee medical and prescription drug benefits, this Court is without a legal basis for finding in favor of Plaintiffs.

C.

Both parties introduce extrinsic evidence to prove their claims. Defendant argues that retiree handbooks contain language reserving their right to alter the benefits, while Plaintiffs argue that PolyOne's course of conduct in continuing retiree health benefits after termination of the various agreements indicates that PolyOne intended them to vest. The Court concludes, however, that it has no reason to consider either.

Basic rules of contract interpretation dictate that courts should only consider extrinsic evidence when an ambiguity exists in the contract. *Yolton*, 435 F.3d at 579. Since this Court finds a complete absence of language saying that retiree health benefits vest, it needs no extrinsic evidence to determine the parties' intent. The Court in *Yard-Man* considered an employer's similar course of conduct in determining that it intended for retirement health benefits to vest; however, the language "will provide insurance benefits equal to the active group" present in the *Yard-Man* CBAs was found to be ambiguous as to whether it referred to the nature of the retiree benefits or their durational limits. *Yard-Man*, 716 F.2d at 1480-1481. Because of this

ambiguity, the Court used extrinsic evidence to illuminate the agreement. *Id.* Here, the MOA and EBAs contain no similarly ambiguous phrase. Therefore, neither party's extrinsic evidence should be admissible to prove intent.

Plaintiffs fail to identify any language vesting retiree healthcare benefits. The CBAs, MOA, and EBAs indicate that such benefits do not vest. Courts have sustained motions for summary judgment when plaintiffs fail to identify "specific written language that is reasonably susceptible to interpretation as a promise . . . to vest the retirees' health benefits." *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999); *see also Bittinger v. Tecumseh Prods. Co.*, 83 F.Supp.2d 851, 860 (E.D. Mich. 1998), *aff'd*, 201 F.3d 440 (6th Cir. 1999) (permitting summary judgment for a former employer in a retiree health action where "plaintiff does not identify any express language contained in the CBAs which indicates defendants' intent to provide lifetime benefits to its retirees"). PolyOne has now changed its retirement plan for retirees. Plaintiffs have failed to identify language in any CBA that PolyOne actually breached by doing so. For all these reasons, Plaintiffs LMRA claims cannot survive.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record